UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

LARRY JACOBSON, as Chairman of the
Joint Industry Board of the Electrical
Industry,                                        REPORT & RECOMMENDATION

                                  Plaintiff,     CV 2004-2567 (ARR)(MDG)

              - against -


ARTEMIS ELECTRICAL SERVICES, INC.,

                                  Defendant.

- - - - - - - - - - - - - - - - - - - -X


GO, United States Magistrate Judge:

        Plaintiff Larry Jacobson, as Chairman of the Joint Industry

Board of the Electrical Industry ("the Joint Board"), brought this

action against defendant Artemis Electrical Services, Inc.

("Artemis") to recover payments for unpaid employee benefit

contributions as well as unpaid contributions to an employee

retirement plan.  The Honorable Allyne R. Ross referred this

action to me to report and recommend on whether to enter default

judgment and, if so, to determine the amount of damages to be

included in the judgment.  For the following reasons, I

respectfully recommend that plaintiff's motion for default

judgment be granted and that plaintiff be awarded damages in the

amount of $346,645.46.

## BACKGROUND

The facts pertinent to this decision are undisputed and are set forth in the Complaint ("Compl.") (ct. doc. 1), Declaration of David R. Hock, Esq. in Support of Request to Enter Default Judgment ("Hock Decl.") (ct. doc. 22-2), Supplemental and Amended Declaration of David R. Hock, Esq. in Support of Plaintiff's Motion for Default Judgment ("Hock Supp. Decl.") (ct. doc. 28-1), which includes an Amended Plaintiff's Statement of Amounts Due (ct. doc. 28-7),[1] a Letter from Mr. Hock dated August 20, 2007 with additional information relating to the interest calculation ("Hock 8/20 Let.") (ct. doc. 30), and a further Letter from Mr. Hock dated August 28, 2007 ("Hock 8/28 Let.") (ct. doc. 31).

The Joint Board is the administrator and fiduciary of various employee benefit plans within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA").  See Compl. at ¶ 5.  The Joint Board established and maintained the benefit plans pursuant to collective bargaining agreements between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union"), and employer associations and independent or unaffiliated employers in various industries.  See id. at ¶ 4.

---

[1]  The Supplemental and Amended Declaration of David R. Hock, Esq. amends his prior declaration with regard to the interest calculation, and also reflects additional interest, attorneys' fees and costs which have accrued since the filing of the motion for default judgment.  See Hock Supp. Decl. at ¶ 3.

Defendant Artemis is a New York corporation engaged in the electrical contracting business within the metropolitan New York area.  See id. at ¶ 10.  Artemis is an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5) and section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"), and employs members of the Union.  See id. at ¶ 10. Artemis is bound to the May 10, 2001 to May 13, 2004 collective bargaining agreement ("CBA"), extending by agreement on May 13, 2004, between the New York Electrical Contractors Association, Inc., the Association of Electrical Contractors, Inc. (collectively, the "Associations"), and independent or unaffiliated contractors and the Union.  See id. at ¶ 12.  Under the terms of the CBA, Artemis was required to remit employee benefit contribution payments, including the employee elective contributions to the 401(k) Plan, to the Joint Board.  See id. at ¶ 13.  Plaintiff claims that Artemis failed to properly report and remit contributions on behalf of employees covered under the CBA, see id. at ¶¶ 19, 20, and failed to timely remit employees' elective contributions to the 401(k) Plan in violation of its obligations under the CBA.  See Hock Supp. Decl. at ¶ 26.

Plaintiff filed its complaint on June 22, 2004 and properly served Artemis on June 24, 2004.  See ct. docs. 1 and 2.  Artemis filed an answer on August 31, 2004.  See ct. doc. 4.  Both parties appeared at conferences before this Court on October 22, 2004, May 18, 2005, July 18, 2005, September 15, 2005, October 26, 2005 and

November 18, 2005.  See minute entries dated 10/22/2004,
5/19/2005, 7/18/2005, 9/15/2005, 10/26/2005 and 11/21/2005.  On
November 1, 2005, Michael R. Strauss, Esq. of Hollander & Strauss,
LLP, counsel for Artemis, filed a motion for leave to withdraw as
its counsel for non-payment of its attorneys' fees.  See ct. doc.
17.  In an order dated November 21, 2005, I granted Mr. Strauss'
motion to withdraw as counsel for defendant and ordered all
discovery in this action stayed until January 10, 2006 to give
defendant an opportunity to obtain new counsel.  See order entered
on 11/22/2005 (ct. doc. 20).  I also advised defendant that
"corporations may appear in federal court proceedings only through
counsel.  If it fails to obtain counsel, the court shall enter
default against it."  Id.

On March 2, 2006, plaintiff filed a motion for default
judgment on the ground that Artemis had failed to retain new
counsel.  See ct. doc. 22.  In an order dated June 13, 2006, the
Honorable Allyne R. Ross referred plaintiff's motion for default
judgment to me for a report and recommendation.  See ct. doc. 23.
On June 15, 2006, I entered an order instructing plaintiff to file
any supplemental motion papers by July 27, 2006 and for the
defaulting defendant to file its response by August 24, 2006.  See
ct. doc. 24.  On July 27, 2006, plaintiff filed supplemental
motion papers to reflect adjustments in interest due as well as
additional attorneys' fees and costs.  See ct. doc. 28.  On August
20, 2007, plaintiff filed a letter to provide the Court with

additional information relating to the interest calculation on the
unpaid contributions and to update the interest calculation
through August 31, 2007.  See ct. doc. 30.  On August 28, 2007,
plaintiff filed a second letter to provide the Court with
additional information as to the interest calculation for ERISA
and non-ERISA plans as well as liquidated damages.  See ct. doc.
31.  Artemis has not submitted any response.

## DISCUSSION

### LEGAL STANDARDS GOVERNING DEFAULT

A default constitutes an admission of all well-pleaded
factual allegations in the complaint, except for those relating to
damages.  See Greyhound Exhibitgroup Inc. v. E.L.U.L. Realty
Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S.
1080 (1993); see also Au Bon Pain Corp. v. Artect, Inc., 653 F.2d
61, 65 (2d Cir. 1981).  Only "in very narrow, exceptional
circumstances" may a court find an allegation not "well pleaded."
TWA, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on
other grounds, 409 U.S. 363 (1973); see also Niles v. Palmer, No.
97 CIV. 7573 (JSM)(KNF), 1999 WL 1419042, at *5 (S.D.N.Y. Oct. 22,
1999).

A defaulting party ordinarily cannot contest the merits of
the plaintiff's claim absent "indisputable" contradictory
evidence.  See Au Bon Pain, 653 F.2d at 65; see also TWA, 449 F.2d
at 63-64.  A default also effectively constitutes an admission
that damages were proximately caused by the defaulting party's

conduct; that is, the acts pleaded in a complaint violated the
laws upon which a claim is based and caused injuries as alleged.
See Greyhound, 973 F.2d at 159; see also TWA, 449 F.2d at 69-70.
The movant need prove "only that the compensation sought relate[s]
to the damages that naturally flow from the injuries pleaded."
Greyhound, 973 F.2d at 159.  As long as there is a "sufficient
basis from which to evaluate the fairness" of the sum awarded, a
court may rely upon detailed affidavits and documentary evidence
in determining damages.  Fustok v. ContiCommodity Servs., Inc.,
873 F.2d 38, 40 (2d Cir. 1989).  The moving party is entitled to
all reasonable inferences from the evidence it offers.  See Au Bon
Pain, 653 F.2d at 65; see also DIRECTV, Inc. v. Hamilton, 215
F.R.D. 460, 462 (S.D.N.Y. 2003).

    However, "[e]ven after [a] default ... it remains for the
court to consider whether the unchallenged facts constitute a
legitimate cause of action, since a party in default does not
admit conclusions of law."  Leider v. Ralfe, No. 01 Civ. 3137
(HB)(FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting
In re Indus. Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420
(S.D.N.Y. 2000) (citing 10A Charles Alan Wright, Arthur R. Miller
& Mary Kay Kane, Federal Practice and Procedure § 2688, at 62 (3d
ed. 1988))).

DEFAULT AND LIABILITY OF DEFENDANT

    The Court, in its discretion, may enter judgment against a
defaulting party pursuant to Fed. R. Civ. P. 55(b)(2).  In my

order dated November 21, 2005, I warned Artemis, after withdrawal of its prior counsel, that the Court would enter default against it if it fails to obtain counsel by January 10, 2006.  <u>See</u> ct. doc. 20.  To date, no attorney has entered a notice of appearance on behalf of Artemis nor has Artemis filed any opposition to the motion for default judgment.

The law is clear that a corporation may not appear in the federal courts except through counsel.  <u>Rowland v. California Men's Colony</u>, 506 U.S. 194, 201-02 (1993); <u>see also</u> <u>Chao v. Russell P. Le Frois Builder, Inc.</u>, 291 F.3d 219, 226 n.7 (2d Cir. 2002).  Because Artemis has failed to comply with this Court's order to appear through counsel, I respectfully recommend that the Court enter default against Artemis.  <u>See</u> <u>Eagle Assocs. v. Bank of Montreal</u>, 926 F.2d 1305, 1310 (2d Cir. 1991).

Notwithstanding a defendant's default, a district court must nevertheless determine whether the allegations state a claim upon which relief may be granted.  <u>See</u> <u>Au Bon Pain</u>, 653 F.2d at 65. Plaintiff alleges that Artemis:  (1) failed to properly report and remit contributions on behalf of the employees covered under the CBA in the amount of $192,151.92 for the period of weeks ending January 3, 2001 through December 25, 2002, <u>see</u> Hock Supp. Decl. at ¶ 20; (2) owes required contributions to the Joint Board in the amount of $14,255.21 for the period of weeks ending May 4, 2005 through June 15, 2005, <u>see</u> <u>id.</u> at ¶ 25; and (3) failed to timely remit contributions to the 401(k) Plan, and consequently owes

interest on late-paid 401(k) Plan contributions in the amount of $377.56. See id. at ¶ 27. Based on my review of the complaint and plaintiff's submissions in support of its motion for default judgment, I find that these allegations are sufficient to establish a breach of the CBA and, in turn, a violation of section 515 of ERISA. See 29 U.S.C. § 1145.[2]

DAMAGES UNDER ERISA

Section 502(g)(2)(B) of ERISA provides that a fiduciary seeking to enforce provisions of an employee benefit plan is entitled to recover:

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of -- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the [unpaid contributions], (D) reasonable attorney's fees and costs of the action ....

29 U.S.C. § 1132(g)(2).

Principal Amounts Due

Plaintiff seeks to recover unpaid contributions due for several employee benefit plans that the Joint Board administers or is responsible for collecting: the Pension, Hospitalization and Benefit Plan of the Electrical Industry ("PHBP"), the Dental

---

[2] Section 515 of ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" to "make such contribution in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145.

Benefit Fund of the Electrical Industry ("DEN"), the Vacation-Holiday Expense Plan ("VHUI"), the Deferred Salary Plan of the Electrical Industry (the "401(k) Plan"), the Educational and Cultural Trust Fund of the Electrical Industry ("E+C"), the Annuity Plan of the Electrical Industry ("ANN"), the Additional Security Benefits Plan of the Electrical Industry ("ASBP"), the Electrical Employers Self Insurance Safety Plan ("EESISP"), the Electrical Industry's Self Insurance Disability Plan and the National Electrical Benefit Fund ("NEBF"). <u>See</u> Compl. at ¶ 5; <u>see also</u> Hock Supp. Decl. at ¶ 9. Although not clearly stated in his earlier damages submissions, plaintiff apparently also seeks recovery of payments owed under the CBA to fund the operations of the Joint Board which he characterized in the complaint are "Non-ERISA Plans." <u>See</u> Compl. at ¶ 6.[3]

Plaintiff seeks unpaid contributions for two payroll periods: the period for the weeks ending January 3, 2001 through December

---

[3] Amounts owed under a CBA are recoverable under the LMRA. <u>See</u> 29 U.S.C. § 185 (permitting suit for violation of a CBA). Plaintiff does not clearly assert a claim for relief with respect to payments owed for non-ERISA plans. Nor does he indicate in his submissions the specific provisions under the CBA under which he seeks recovery or discuss the specific non-ERISA plans except in his final submission on August 28, 2007. <u>See</u> Hock 8/28 Let. However, he does allege that defendant "fail[ed] to remit to the Joint Board those contributions owed to all of the Plans ...." Compl. at ¶ 39. Given the liberal pleading permitted under the Federal Rules of Civil Procedure, I recommend that the Court award plaintiff damages for amounts sought for administrative costs. <u>See</u> <u>Phillips v. Girdich</u>, 408 F.3d 124, 130 (2d Cir. 2005) ("the Rules do not require a plaintiff to plead the legal theory, facts, or elements underlying his claim").

25, 2002, and the period for the weeks ending May 4, 2005 through June 15, 2005.  See Hock Supp. Decl. at ¶¶ 20, 24, 25.

*Audit Deficiency*.  The first payroll period at issue was the subject of an audit conducted by the Joint Board which revealed that Artemis had not properly reported and remitted contributions on behalf of the employees covered under the CBA in the amount of $192,151.92 (the "audit deficiency").  See id. at ¶ 20; see also Compl. at ¶ 20.  Plaintiff has submitted a chart summarizing the audit results and the specific amounts owed by defendant for six employee benefit plans (PHBP, DEN, VHUI, E+C, NEBF and EESISP) and for "JIB."[4]  See Hock Supp. Decl., Exh. D (chart summary).  In the absence of conflicting evidence,[5] I find that the audit deficiency, which is based on examination of the defendant's records for wages paid, provides a sufficient basis to support plaintiff's claim for the amounts due for the six plans and the JIB for the weeks ending January 3, 2001 through December 25, 2002.

---

[4]  In response to an inquiry by this Court, plaintiff's counsel has advised that "JIB" is a category for payments owed under the CBA for the costs of administration of the Joint Board, which defendant is required to pay pursuant to the CBA.  See CBA at 11, § 14, attached as Exh. B to the Supp. Hock Decl.

[5]  Claiming lack of knowledge, defendant neither admits nor denies plaintiff's allegation of the amount of the audit deficiency.  Compare Compl. at ¶ 20 with Answer at ¶ 1 (alleging lack of knowledge).  Such allegations do not suffice to challenge the audited amounts.  Cf. Stepheny v. Brooklyn Hebrew School for Special Children, 356 F. Supp. 2d 248, 255 (E.D.N.Y. 2005) (treating responses of lack of knowledge or information sufficient to admit or deny a fact is not sufficient to create an issue of fact in a summary judgment motion).

*Amounts Due in 2005*.  Plaintiff also claims that Artemis owes required contributions to the Joint Board for the weeks ending May 4, 2005 through June 15, 2005 in the amount of $14,255.21.  See id. at ¶ 25 and Exh. I.  Plaintiff supports the amount claimed for unpaid contributions for the seven week period with weekly printouts of the contributions and payments owed to various ERISA and non-ERISA plans.  Id.  Since all of the amounts sought are based on reports electronically filed by Artemis, see id. at ¶ 26, I find a sufficient basis for the amount of unpaid contributions due for this seven week period.

Therefore, I respectfully recommend that this Court award the Joint Board default damages for unpaid contributions and payments owed for ERISA and non-ERISA plans in the amount of $206,407.13 ($192,151.92 + $14,255.21).

Interest on Unpaid Contributions

*Interest on the Audit Deficiency*.  Section 502(g)(2)(B) authorizes an award of "interest on unpaid contributions [which] shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of [the Internal Revenue Code]."  29 U.S.C. § 1132(g)(2).  Plaintiff initially sought an award of interest for the audit deficiency from March 18, 2003 through July 27, 2006 at a rate of 6 percent.  See Hock Supp. Decl. at ¶¶ 33-34.  In response to the Court's request for additional information pertaining to the interest rate applied to the unpaid contributions, plaintiff's counsel explained that only

-11-

two of the plans administered by the Joint Board had provisions in effect during the audited time period which specified an interest rate.  See Hock 8/20 Let. at 1-2.  In particular, the Pension, Hospitalization and Benefit Plan ("PHBP") trust agreement states that the "interest on the unpaid contributions [is to be] determined at a rate of one-half percent (1/2 %) above the prime rate quoted by Citibank as of the first of each calendar quarter." Id. at 2; see also Hock Supp. Decl., Exh. C at ¶ 3.  Also, the National Electric Benefit Plan ("NEBP") provides that an interest rate of 10 percent is applied to delinquent contributions.  See Hock 8/20 Let. at 2.

Thus, I recommend that the Court award interest on unpaid contributions required by the NEBP at a rate of 10%.  However, because Citibank, N.A. no longer publishes its prime rate, plaintiff now seeks to utilize the prime rate published by the Federal Reserve Board to calculate the interest on the audit deficiency for the PHBP, and the underpayment rate for the remaining ERISA and non-ERISA plans, except as to the NEBP.  See id. and Exh. B.  Rather than substituting the Federal Reserve Board's prime rate, which was not mentioned in either the CBA or the trust agreements, I recommend that the Court apply the residual interest rate specified under section 502(g)(2)(B) of ERISA, which incorporates the interest rate in the Internal Revenue Code for underpayments under 26 U.S.C. § 6621(a)(2) (the "underpayment rate").  See 29 U.S.C. § 1132(g)(2).  Since the

-12-

underpayment rate is adjusted quarterly, that interest rate has fluctuated between 4 percent and 9 percent from January 3, 2001 to the present. See Hock Supp. Decl., Exh. K (chart of underpayment rates). Rather than recalculating interest quarterly, I recommend that the Court award interest at a rate of 6 percent on all ERISA plans, except as to the NEBP. This 6 percent rate is the average of the underpayment rates in effect since the audited period in question, rounded to the nearest whole percent.

In addition, plaintiff may be entitled to prejudgment interest for the non-ERISA plans. Although plaintiff has not provided specific authority for such an award, courts have broad discretion to grant prejudgment interest and determine the rate used. See Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir. 2000) (affirming award of prejudgment interest in action brought under ERISA ); Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1071-72 (2d Cir. 1995) (affirming award of prejudgment interest of 6.01%); Wickham Contracting Co., Inc. v. Local Union No. 3, 955 F.2d 831, 835 (2d Cir. 1992) (affirming award of prejudgment interest under Section 303(b) of the LMRA ). I recommend that the court award prejudgment interest on unpaid contributions due under the non-ERISA plans, since such interest would not be contrary to the remedial purposes of the LMRA and would insure that the beneficiaries of the plans are compensated for the lost income due to any delay in payment. Id. I further recommend that the Court

-13-

utilize the recommended residual rate of 6 percent in determining the interest due on all the plans, except the NEBF. This rate appears to reflect the considered judgment of Congress regarding the appropriate compensation to plaintiffs for loss of the use of the unpaid contributions required under CBAs and related trust agreements. Cf. S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1476-77 (2d Cir. 1996) (upholding prejudgment interest award in securities fraud case at the rate the Internal Revenue Service charges on delinquent taxes, recognizing "the circumstances here, where defendants have had the use of the money").

Furthermore, I recommend that the Court follow plaintiff's simpler methodology of using one accrual date for interest on accumulated payments, which forgoes collection of interest on each weekly contribution as it becomes due. Plaintiff has calculated the amounts due for the two time periods corresponding to the time covered by the two CBAs in effect during the audited period: the period from January 3, 2001 through May 9, 2001 when the May 2000 CBA was in effect, and the period from May 10, 2001 through August 31, 2007 when the May 2001 CBA was in effect. Although plaintiff calculates interest for amounts due for both CBAs from December 25, 2002, I recommend that this Court award plaintiff interest for the amounts due under the first CBA from May 9, 2001, the due date of the last payment (or 2305 days through August 31, 2007) and from December 25, 2002 for amounts due under the second CBA (or 1710 days through August 31, 2007). Therefore, as set forth in

greater detail in Appendix A annexed hereto, and using an interest rate of 10 percent for the NEBP and 6 percent for all other ERISA and non-ERISA plans, I respectfully recommend that plaintiff be awarded $60,272.39 ($4,568.89 for the NEBP + $55,703.50 for the remaining plans) for interest on the unpaid contributions through August 31, 2007 and at a daily rate of $32.57 ($2.46 for the NEBP + $30.11 for the remaining plans) thereafter until entry of judgment.

*Interest on Contributions Due in 2005*.  Plaintiff also seeks interest on the $14,255.21 in unpaid required contributions for the period of weeks ending May 4, 2005 through June 15, 2005.  See Hock Supp. Decl. at ¶ 35.  Plaintiff has again provided a spreadsheet applying various interest rates for the different plans for these contributions without an explanation for the different interest rates for the JIB, COPE, EESISP and BENE DLQ contributions.  See Hock 8/20 Let., Exh. C.  For the reasons stated above, I recommend that the Court use an interest rate of 7 percent for all the unpaid contributions for the ERISA and non-ERISA plans, with the exception of the NEBP.  The recommended rate is the blended underpayment rates from May 4, 2005 to the present, rounded to the nearest whole number.  Accordingly, as set forth in greater detail in Appendix B, I respectfully recommend that plaintiff be awarded $2,306.98 ($127.32 for the NEBP + $2,179.66 for the remaining plans) for interest on the 2005 unpaid contributions through August 31, 2007 and at a daily rate of $2.78

-15-

($0.15 for the NEBP + $2.63 for the remaining plans) thereafter until entry of judgment.

 *Interest on the Late-Paid 401(k) Plan Contributions*. Plaintiff also seeks interest for untimely contributions made by defendant to the 401(k) Plans of various employees which were due for the weeks ending from July 3, 2002 through June 15, 2005. <u>See</u> Hock Supp. Decl. at ¶ 27. Plaintiff has provided a schedule setting forth the date that each payment was due and the actual date of payment. <u>See</u> <u>id.</u>, Exh. J. The length of the delay in payment ranged from 22 to 69 days. <u>Id.</u> As set forth in the schedule, plaintiff has calculated the interest owed for the number of days of delay and has apparently used the underpayment rate in effect at the time the payment was due, yielding a total interest on delayed payments of $346.17. <u>Id.</u>

 Plaintiff also seeks "additional" interest of $31.39 accrued on the interest on the late payments through January 31, 2006. However, plaintiff fails to cite to any provision in the CBA or any section of ERISA to support its claim for additional interest on the initial interest. Since plaintiff has sufficiently established defendant's delay in payment, I recommend that plaintiff be awarded $346.17 in interest on the late-paid 401(k) Plan contributions for the period of actual delay.

<u>Liquidated Damages</u>

Plaintiff requests additional damages in the amount of the interest on the unpaid contributions.  <u>See</u> Hock Suppl. Decl. at ¶ 37.  Section 502(g)(2)(C) of ERISA provides for additional damages on unpaid contributions in "an amount equal to the greater of -- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions.]"  29 U.S.C. § 1132(g)(2)(C).  The award of additional interest or liquidated damages is mandatory when a fiduciary prevails on a claim for unpaid contributions under ERISA.  <u>See</u> <u>Scotto v. Brink's Inc.</u>, 751 F. Supp. 335, 342-43 (E.D.N.Y. 1990), <u>reversed on other grounds</u>, 962 F.2d 225 (2d Cir. 1992); <u>see</u> <u>also</u> <u>Idaho Plumbers & Pipefitters v. United Mechanical</u>, 875 F.2d 212, 215 (9th Cir. 1989).

As set forth in Appendix A and Appendix B, the interest on the contributions owed for ERISA plans with respect to the audit deficiency is $59,337.54 and $2,238.47 with respect to the unpaid contributions for seven weeks in 2005.  Thus, I recommend an award of liquidated damages totaling $61,576.01.

<u>ATTORNEYS' FEES AND COSTS</u>

Plaintiff is also entitled to reasonable attorneys' fees and costs.  Section 502(g)(2) provides that, in any action by a fiduciary for a plan in which a judgment in favor of the plan is awarded, "the court shall award the plan reasonable attorney's

-17-

fees and costs of the action, to be paid by the defendant[.]"  29
U.S.C. § 1132(g)(2)(D).  Since the award of attorneys' fees is not
discretionary, the court's sole duty is to determine what amount
is reasonable.  See Labarbera v. Clestra Hauserman, Inc., 369 F.3d
224, 226 (2d Cir. 2004); see also O'Farrell v. Twin Bros. Meats,
Inc., 889 F. Supp. 189, 192 (E.D.Pa. 1995).

The standard method for determining the amount of reasonable
attorneys' fees is "the number of hours reasonably expended on the
litigation multiplied by a reasonable hourly rate," or the
lodestar.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct.
1933, 1940 (1983); see also Chambless v. Masters, Mates & Pilots
Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989), cert. denied,
496 U.S. 905 (1990).

In reviewing a fee application, the district court must
examine the particular hours expended by counsel with a view to
the value of the work product of the specific expenditures to the
client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133 (2d
Cir. 1994); see also DiFilippo v. Morizio, 759 F.2d 231, 235 (2d
Cir. 1985).  If any expenditure of time was unreasonable, the
court should exclude these hours from the lodestar calculation.
See Hensley, 461 U.S. at 434; see also Lunday, 42 F.3d at 133.
The court should thus exclude "excessive, redundant or otherwise
unnecessary hours, as well as hours dedicated to severable
unsuccessful claims."  Quaratino v. Tiffany & Co., 166 F.3d 422,
425 (2d Cir. 1999).  A party seeking attorneys' fees bears the

burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records.  See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

Plaintiff requests $17,587.50 in attorneys' fees and $756.20 in costs incurred through July 27, 2006.  See Hock Supp. Decl. at ¶¶ 43, 45.  Plaintiff's counsel's supplemental and amended declaration sets forth the hourly billing rates for the attorneys and paralegals who worked on the case.  See id. at ¶¶ 39-46. Plaintiff's counsel also provided contemporaneous time sheets which describe with specificity, by attorney, the nature of the work done, the hours expended, the dates, and the costs incurred during the prosecution of this case.  See Hock Supp. Decl., Exh. L.  According to Mr. Hock's declaration, the amount of time spent by the attorneys and paralegals and their respective billing rates are summarized below:

**Through December 31, 2004**

| Name | Attorney/Paralegal | Time | Rate | Amount |
|---|---|---|---|---|
| James R. Grisi | Partner | 1.1 | $200.00 | $220.00 |
| Maureen C. McGrath | Associate | 24.7 | $175.00 | $4,322.50 |
| Nicholas R. Maxwell | Paralegal | 4.0 | $60.00 | $240.00 |

| Name | Attorney/ Paralegal | Time | Rate | Amount |
|---|---|---|---|---|
| James R. Grisi | Partner | 2.6 | $225.00 | $585.00 |
| Manlio DiPreta | Of Counsel | 46.9 | $225.00 | $10,552.50 |
| David R. Hock | Associate | 1.7 | $200.00 | $340.00 |
| Nicholas R. Maxwell | Paralegal | 2.3 | $75.00 | $172.50 |
| Megan E. Ridley | Paralegal | 15.4 | $75.00 | $1,155.00 |

**Total Fees:**          **$17,587.50**[6]

With regard to the reasonableness of the hourly rates charged, the hourly rates should be based on "the prevailing marketplace rates in the community for similar services by a lawyer of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 (1984)). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. See Chambless, 885 F.2d at 1059. The Court in Rotella found that "the prevalent market rate in this district is in the range of $200 to $250 for partners and between $100 and $200 for junior and senior associates." Rotella v. Bd. of Educ. of City of New York, No. CV 01-0434 (NGG), 2002 WL 59106,

---

[6] While plaintiff requests $17,587.50 in attorneys' fees, counsel's billing records only support fees totaling $16,714.50 from June 8, 2004 through July 25, 2006. Thus, I recommend that the Court base its calculation on the amount supported by the billing records. See Hock Supp. Decl., Exh. L.

at *2-3 (E.D.N.Y. Jan. 17, 2002) (citations omitted) (finding that rate of lead counsel in a small firm of $225 per hour and rates of $135 and $100 per hour for junior counsel were reasonable); <u>see also</u> <u>S.E.C. v. Goren</u>, 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003); <u>Morin v. Nu-Way Plastering, Inc.</u>, No. CV 03-405 (LDW)(ARL), 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (stating that in this district, prevailing hourly rates have ranged from $200-$300 for partners, $200-$250 for senior associates and $100-$150 for junior associates).

Counsel for plaintiff, Cohen, Weiss and Simon LLP (the "firm"), is a small firm that has engaged almost exclusively in the representation of labor unions and employee benefit plans. <u>See</u> Hock Supp. Decl. at ¶ 44; <u>see also</u> Cohen, Weiss and Simon LLP's website at www.cwsny.com. One partner, one "of counsel" attorney, two associates and two paralegals billed for their time spent on this case from June 8, 2004 through July 25, 2006. <u>See</u> Hock Supp. Decl., Exh. L. Plaintiff requests $200 per hour (in 2004) and $225 per hour (from 2005 to July 2006) for Mr. Grisi, a partner at the firm who is a 1988 law school graduate and has been practicing in the area of labor and employee benefits since 1989. <u>See</u> Hock Supp. Decl. at ¶ 44. Plaintiff requests $225 per hour for Mr. DiPreta, an "of counsel" attorney at the firm who is a 1984 law school graduate and has been practicing in the area of labor and employee benefits since 1984. Plaintiff requests $175 per hour (in 2004) and $200 per hour (from 2005 through July 2006)

for associates who range from having a few years of experience in the area of labor and employee benefits to approximately six years of experience. Such fees also are reasonable in light of awards given to associates with comparable experience in this District. I find that the rates sought by plaintiff's counsel are reasonable based on my knowledge of prevailing rates for such matters in New York. See Rotella, 2002 WL 59106, at *2-3.

Also, I find plaintiff's request for $60 per hour (in 2004) and $75 per hour (from 2005 through July 2006) for work performed by the firm's paralegals to be reasonable. See Morin, 2005 WL 3470371 at *2 (citing Perdue v. C.U.N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998)(awarding $75 per hour for the work performed by paralegals)).

While I find the amount of time that plaintiff's counsel spent on the prosecution of this case reasonable, plaintiff has failed to deduct the time spent prosecuting claims against defendant Spiro Sinanis who was dismissed from this case pursuant to a stipulation of discontinuance filed on October 7, 2004. See ct. doc. 10. Therefore, based on my review of the billing records from June 8, 2004 through October 8, 2004, the following deductions have been made where the time records clearly indicate that the work performed related to the stipulation of discontinuance as to defendant Sinanis: $1,522.50 (8.7 hours for Ms. McGrath at an hourly rate of $175); and $48 (0.8 hours for Mr. Maxwell at an hourly rate of $60). Furthermore, as it is not

clear whether some of the entries made from June 8, 2004 through
October 8, 2004 pertained to defendant Spinanis, defendant
Artemis, or both, I recommend that the remaining attorneys' fees
of $1,598 for that time period be reduced by 10 percent.  See
Hensley v. Eckerhart, 461 U.S. 424, 441 (1983) (courts may reduce
the requested hours, hourly rate and/or make aggregate percentage
reductions where, as in this instance, it is difficult to separate
hours billed for specific tasks).  Therefore, I respectfully
recommend that plaintiff be awarded $14,984.20 in attorneys' fees.

Plaintiff also seeks an award of costs totaling $756.20 which
consist of filing fees, process service fees, photocopies,
postage, transportation and phone tolls.  See Hock Supp. Decl. at
¶¶ 44-45.  While there appears to be some confusion as to the
amount of costs incurred,[7] I recommend that the Court rely on the
amount supported by counsel's billing records which reflect total
costs of $835.00.

Costs are reimbursable "so long as they were incidental and
necessary to the representation" of the client.  Goren, 272
F. Supp. 2d at 214.  While plaintiff's counsel has provided
adequate documentation to support its request, it has failed to
deduct the costs incurred during the prosecution of its claims
against defendant Sinanis.  Deducting the cost for service on
defendant Sinanis ($80.00) and reducing the remaining costs

---

[7]  Mr. Hock states that the costs attributable to this
action total $669.28, and then states in the following paragraph
that costs total $756.20.  See Hock Supp. Decl. at ¶¶ 44, 45.

incurred from June 8, 2004 to October 8, 2004 ($24.17) by 10 percent, the amount of recoverable costs would be $752.58. Thus, I respectfully recommend that plaintiff be awarded $15,736.78 ($14,984.20 + $752.58) in attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, I recommend that the court award plaintiffs judgment in the amount of $346,645.46 based on the total following damages: (a) $206,407.13 for unpaid contributions; (b) $62,579.37 in interest on unpaid contributions; (c) $346.17 in interest on late-paid 401(k) Plan contributions; (d) $61,576.01 in liquidated damages through August 31, 2007; and (e) $15,736.78 for attorneys' fees and costs. In addition, I recommend that interest be awarded at a daily rate of: $32.74 until entry of judgment based on an interest rate of 6 percent on the delinquent contributions from January 3, 2001 through December 25, 2002, and 7 percent on the delinquent contributions from May 4, 2005 through June 15, 2005, except for the NEBF; and daily interest of $2.61 on the NEBF until entry of judgment based on an interest rate of 10 percent.

This report and recommendation will be filed via electronic case filing ("ECF") and a copy will be mailed to defendant on this date. Any objections to this report and recommendation must be filed with the Clerk of the Court, with a copy to the undersigned and to the Honorable Allyne R. Ross by September 18, 2007.

Failure to file objections within the specified time waives the right to appeal.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

      **SO ORDERED.**

Dated:    Brooklyn, New York
           August 31, 2007

                                             _____/s/_____
                                             MARILYN DOLAN GO
                                             UNITED STATES MAGISTRATE JUDGE